In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00153-CR


______________________________




JASON BRYAN BOYD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 339th Judicial District Court


Harris County, Texas


Trial Court No. 750686




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Jason Bryan Boyd has filed a notice of appeal from his conviction for aggravated robbery. 
Sentence was imposed on November 30, 1999. On June 25, 2001, Boyd filed a motion and notice
of late appeal with the district clerk of Harris County. (1) The notice of appeal was not filed within
thirty days of the imposition of sentence and is therefore not timely. Tex. R. App. P. 26.2(a). 

 A late notice of appeal is considered timely and thus invokes the appellate court's jurisdiction
if (1) it is filed within fifteen days of the last day allowed for filing, (2) a motion for extension of
time is filed in the court of appeals within fifteen days of the last day allowed for filing the notice
of appeal, and (3) the court of appeals grants the motion for extension of time. Slaton v. State, 981
S.W.2d 208 (Tex. Crim. App. 1998); Olivo v. State, 918 S.W.2d 519 (Tex. Crim. App. 1996). 
Further, when a notice of appeal is filed within the fifteen-day period but no timely motion for
extension of time is filed, the appellate court lacks jurisdiction. Slaton, 981 S.W.2d 208; Olivo, 918
S.W.2d 519.

 The notice of appeal and the motion to extend time to file a notice of appeal were both filed
outside the time frame that would permit this Court to assert jurisdiction over the case. 


 The appeal is dismissed for want of jurisdiction.



 Donald R. Ross

 Justice


Date Submitted: October 16, 2001

Date Decided: October 16, 2001


Do Not Publish
1. This is an appeal transferred to this Court by the Texas Supreme Court for purposes of
docket equalization.



New Roman"> In addition to the evidence provided by Cooks, the State presented testimony from Officer
Justin Mills of the Marshall Police Department, who discussed the condition of Valentine's eye and
told the jury Valentine was still upset and crying when he talked to her. Over hearsay objections,
Mills was allowed to testify that "[s]he said that her boyfriend, Cedric James, hit her in the face." 
Yet, subsequent testimony that Valentine said, "Cedric James was the one that hit her," was met with
no objection. Mills also told the jury, without objection, that James became the center of his
investigation based on Valentine's answers to questions about who assaulted her, a standard affidavit
provided by Valentine, and a sworn statement made by her. (1) 

 The jury found James guilty of assault, and the trial court made an affirmative finding of
family violence pursuant to Article 42.013 of the Texas Code of Criminal Procedure. Tex. Code
Crim. Proc. Ann. art. 42.013 (Vernon 2006). 

II. Admission of Cooks's and Mills's Statements Over a Hearsay Objection Was Not
Harmful Error

 We review a trial court's admission of evidence for abuse of discretion. McCarty v. State,
257 S.W.3d 238, 239 (Tex. Crim. App. 2008); Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim.
App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable
disagreement. McCarty, 257 S.W.3d at 239 (citing Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim.
App. 1992)). Unless there is clear abuse of the trial court's discretion, its ruling will not be reversed. 
Id. 

 Hearsay "is a statement, other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). 
Hearsay testimony is generally inadmissible at trial unless the statements fall within a recognized
exception to the hearsay rule. Tex. R. Evid. 802; McCarty, 257 S.W.3d at 239. Rule 803(2) of the
Texas Rules of Evidence provides an exception to the hearsay rule for a "statement relating to a
startling event or condition made while the declarant was under the stress of excitement caused by
the event or condition." Tex. R. Evid. 803(2). The basis for the excited utterance is psychological,
and considers "the fact that when a man is in the instant grip of violent emotion, excitement or pain,
he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth
will come out.'" Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing Evans v. State,
480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). 

 The critical determination is whether Valentine was still dominated by emotions at the time
of the statement to such a degree as would reasonably show that the statement "resulted from impulse
rather than reason and reflection." Id. at 596 (citing Fowler v. State, 379 S.W.2d 345, 347 (Tex.
Crim. App. 1964)). Nondispositive considerations in determining whether a hearsay statement is
admissible include the amount of time that elapsed between the event and the time of the statement
and whether the statement was made in response to a question. Id. at 595-96; see Oveal v. State, 164
S.W.3d 735, 740 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd) ("If the statement is made while
the declarant is still in the grip of emotion, excitement, fear, or pain and the statement relates to the
exciting event, it is admissible even after an appreciable amount of time has elapsed.").

 Both Cooks and Mills testified that Valentine was upset and crying when the statements were
made to them. (2) Cooks believed that Valentine had said that "her and Cedric got into it" about ten
to fifteen minutes after the incident occurred. Although Mills stated "[b]y the time we got there, I
mean, I'm sure the shock had worn off," he also "had to calm her down to find out, you know, where
the actor might be at." Valentine's answer to a standard form provided by Mills said she would feel
danger after the officer left. Based on these facts, which indicate that Valentine may still then have
been dominated by emotions when making her statements to Cooks and Mills, we cannot say the trial
judge's discretionary decision was so clearly wrong as to lie outside that zone within which
reasonable persons might disagree. (3) See Oveal, 164 S.W.3d at 740-41 (statements made two hours
after incident were still excited utterances). 

 Moreover, even if one assumes that admission of those statements was in error, such an error
would not be reversible, harmful error due to cumulative testimony. Bryant v. State, 282 S.W.3d
156, 163 (Tex. App.--Texarkana 2009, pet. dism'd, untimely filed). Testimony that "[Valentine]
said they was arguing" and "Cedric James was the one that assaulted her," prompted no objections
and proved the same facts. See Liggens v. State, 50 S.W.3d 657, 662 (Tex. App.--Fort Worth 2001,
pet. ref'd). Further, there was no objection raised to Cooks's statements during the 9-1-1 call that
"this guy named Cedric James has jumped on my daughter." This point of error is overruled. 

III. Counsel Was Not Ineffective for Failing to Lodge Confrontation Clause Objections

 Next, James contends testimony regarding Valentine's statements violated his rights under
the Confrontation Clause. (4) "[F]ailure to object in a timely and specific manner during trial forfeits
complaints about the admissibility of evidence. This is true even though the error may concern a
constitutional right of the defendant." Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002)
(footnote omitted). General rules of preservation must be followed to preserve error on
Confrontation Clause grounds. Paredes v. State, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004);
Acevedo v. State, 255 S.W.3d 162, 173 (Tex. App.--San Antonio 2008, pet. ref'd). "An objection
on hearsay does not preserve error on Confrontation Clause grounds." Reyna v. State, 168 S.W.3d
173, 179 (Tex. Crim. App. 2005); see also Paredes, 129 S.W.3d at 535. Because counsel objected
only on the basis of hearsay and did not object to Cooks's and Mills' statements on Confrontation
Clause grounds, any error regarding a violation of the Confrontation Clause has not been preserved
for review. Tex. R. App. P. 33.1. Since there was no preservation of any such error, it will not be
considered. We examine whether this failure amounted to ineffective assistance of counsel. 

 A. Standard of Review 

 Any allegation of ineffectiveness of counsel must be firmly founded in the record. Wallace
v. State, 75 S.W.3d 576, 589 (Tex. App.--Texarkana 2002), aff'd, 106 S.W.3d 103 (Tex. Crim. App.
2003); Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999). From the record received by this Court (which does not
include counsel's reasons for the alleged failures), James bears the burden of proving by a
preponderance of the evidence that counsel was ineffective. Thompson, 9 S.W.3d at 813; Cannon
v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984); see Goodspeed, 187 S.W.3d at 392. 

 The two-pronged Strickland test handed down by the United States Supreme Court is applied
to determine whether James's counsel was ineffective in having failed to preserve any Confrontation
Clause issues. Strickland v. Washington, 466 U.S. 668 (1984). Failure to satisfy either prong of the
Strickland test is fatal. Ex parte Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, if
either prong of the Strickland test fails, we need not examine the other. Strickland, 466 U.S. at 697. 

 First, James must show that counsel's performance fell below an objective standard of
reasonableness when considering prevailing professional norms. Id. at 687-88. There is a strong
presumption that counsel's conduct fell within the wide range of reasonable professional assistance
and that the challenged action could be considered to have been prompted by sound trial strategy. 
Id. at 689; Ex parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d
707, 712 (Tex. Crim. App. 2000). Therefore, absent contrary evidence, we will not second-guess
the strategy of James's counsel at trial through hindsight. Blott v. State, 588 S.W.2d 588, 592 (Tex.
Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.--Texarkana 2005, pet. ref'd). In
this case, since the record is silent as to why counsel failed to make a Confrontation Clause
objection, we will assume it was due to any strategic motivation that can be imagined. See Mata v.
State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex. App.--Texarkana 2005, pet. ref'd). To meet the second prong of the Strickland test, James must show that the deficient
performance damaged his defense to such a degree that there is a reasonable probability that the
result of the trial would have been different had it not occurred. Strickland, 466 U.S. at 694; Tong,
25 S.W.3d at 712. A reasonable probability "is a probability sufficient to undermine confidence in
the outcome." Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 

 B. Post-Crawford Confrontation Clause 

 The admission of a testimonial, out-of-court statement from a declarant who does not appear
at trial violates the Confrontation Clause unless the declarant was unavailable to testify at trial and
the defendant had a prior opportunity for cross-examination. (5) Crawford v. Washington, 541 U.S.
36, 68 (2004). Such statements may violate the Confrontation Clause "even if the statement 'falls
under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.''" 
Wall v. State, 184 S.W.3d 730, 734-35 (Tex. Crim. App. 2006). 

 The Texas Court of Criminal Appeals has rejected any "categorical approach" to analyzing
Crawford claims on appeal. Id. at 742; see also Moore v. State, 169 S.W.3d 467, 470-71 (Tex.
App.--Texarkana 2005, pet. ref'd). Nor does appellate review require strict deference to the trial
court's decision. Wall, 184 S.W.3d at 742. Instead, the issue of whether a statement is to be deemed
"testimonial" for Crawford purposes is an issue that we review de novo. Id.; Moore, 169 S.W.3d
at 474. Although the United States Supreme Court has not yet provided a comprehensive definition
of the term "testimonial," it has held that the term generally includes statements given in response
to police interrogation. Crawford, 541 U.S. at 63, 67-68; Wall, 184 S.W.3d at 736. Expanding on
the holding in Crawford, the United States Supreme Court has held that:

 Statements are nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the interrogation is
to enable police assistance to meet an ongoing emergency. They are testimonial
when the circumstances objectively indicate that there is no such ongoing emergency,
and that the primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.


Davis v. Washington, 547 U.S. 813, 822 (2006) (footnote omitted).

 In conducting the required de novo review, the testimonial nature of the statement depends
upon whether "a reasonable declarant, similarly situated (that is, excited by the stress of a startling
event), would have had the capacity to appreciate the legal ramifications of her statement." Wall,
184 S.W.3d at 742. Generally, statements made to police while the declarant is still in personal
danger are not 

 made with consideration of their legal ramifications because the declarant usually
speaks out of urgency and a desire to obtain a prompt response; thus, those
statements will not normally be deemed testimonial. But after the immediate danger
has dissipated, a person who speaks while still under the stress of a startling event is
more likely to comprehend the larger significance of his words: "If the record fairly
supports a finding of comprehension, the fact that the statement also qualifies as an
excited utterance will not alter its testimonial nature."


Id. (footnote omitted). 

 The test set out in Davis and quoted above in distinguishing between a testimonial and a
nontestimonial statement would appear to apply primarily to the most common situations in which
such statements arise: statements made to police officers. However, the last sentence ("that the
primary purpose of the interrogation is to establish or prove past events potentially relevant to later
criminal prosecution") would seem to have the Confrontation Clause apply in some other
circumstances as well. Taking into consideration that the statements made by Valentine, the victim,
to Cooks, her mother and neighbor, immediately after the beating, one does not assume that they
were made to "establish or prove past events" for the purpose of subsequent criminal prosecution. 
Reiterating, the Sixth Amendment bars the admission of only testimonial statements of a witness
who did not testify at trial and was not subject to cross-examination by the defendant. Crawford,
541 U.S. at 53-54. The Confrontation Clause protection does not apply to nontestimonial
statements. An accuser who makes a formal statement to a law enforcement officer bears testimony
in a sense that statements made to a close acquaintance may not. See Davis v. State, 268 S.W.3d
683, 709-10 (Tex. App.--Fort Worth 2008, pet. ref'd); Davis v. State, 169 S.W.3d 660, 667 (Tex.
App.--Austin 2005), aff'd, 203 S.W.3d 845 (Tex. Crim. App. 2006).

 "The timing, purpose, and setting of a challenged statement can be relevant considerations
when determining whether the statement's primary purpose is testimonial." Lollis v. State, 232
S.W.3d 803, 806 (Tex. App.--Texarkana 2007, pet. ref'd). Here, counsel could have chosen to make
no objection to informal statements made by Valentine to her mother since they were not testimonial.
The primary purpose of that communication would not have been to establish or prove past events
potentially relevant to later criminal prosecution. Recognizing the usual kind of relationship between
mothers and daughters, it would have been more likely that Valentine was seeking succor and
sympathy from her mother and she was not making the statements to promote later prosecution of
James. 

 In contrast to the statements made by Valentine to her mother, the statements made by her
to Mills have a different character. A "reasonable person would have appreciated the fact that the
officers were conducting a criminal investigation and collecting evidence for a prospective
prosecution" of James, and we find those statements to Mills testimonial. Wall, 184 S.W.3d at 745. 
Because Valentine did not appear at trial and was not shown to be unavailable and James did not
have an opportunity to cross-examine her, admission of the statement made by Valentine to Mills
violated the Confrontation Clause. One should take into account that the right to effective assistance
of counsel merely ensures the right to reasonably effective (not perfect) assistance and this right 
does not mean errorless or perfect counsel whose competency of representation is to be judged by
hindsight. Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

 Further, Crawford error is constitutional error that is subject to a harm analysis. Tex. R. App.
P. 44.2(a); McNac v. State, 215 S.W.3d 420, 421 (Tex. Crim. App. 2007). Sound trial strategy could
include only objecting to statements which would constitute reversible error. Isolated mistakes or
improper evidence or argument do not constitute ineffective assistance of counsel. Thomas v. State,
886 S.W.2d 388, 392 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). Counsel could have also
made a strategic decision to not object to statements to Mills if he believed the error would not
contribute to conviction or punishment. See Wall, 184 S.W.3d at 745-46. Four factors are
considered in analyzing harm from Crawford error: (1) the importance of the hearsay statements to
the State's case; (2) whether the hearsay evidence was cumulative of other evidence; (3) the presence
or absence of evidence corroborating or contradicting the hearsay testimony on material points; and
(4) the overall strength of the State's case. Davis v. State, 203 S.W.3d 845, 852 (Tex. Crim. App.
2006), cert. denied, 549 U.S. 1344 (2007). Under the Confrontation Clause analysis, statements
made by Valentine to Cooks were not testimonial in nature. Those statements, coupled with the
9-1-1 emergency call, (6) were cumulative of, and corroborated the statements that Valentine made to
Mills. Thus, statements to Mills were not of utmost importance to the State's case, which could have
been established without them. Because there was not harm in admitting Valentine's statements to
Mills, we conclude that counsel was not ineffective for failing to object. 

IV. The Evidence Was Legally and Factually Sufficient to Support the Verdict 

 A. Legal Sufficiency

 The requirement of legal sufficiency confirms that a fact question was raised by the evidence. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was
insufficient to raise an issue of James's guilt, there was no issue for the jury's resolution. Id. When
conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to
the verdict and determine whether any rational jury could find the essential elements of assault as
charged by the indictment beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007); Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Clewis, 922 S.W.2d at 132-33; Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991). 

 Once we determine the evidence raised issues for the jury's resolution, we will not sit as the
thirteenth juror, re-evaluating the weight and credibility of the evidence. Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts
in the testimony, and draw reasonable inferences from basic facts. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Clewis, 922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d 349, 354 (Tex.
App.--Fort Worth 2002, pet. ref'd) (citing Jackson, 443 U.S. at 319). 

 B. Factual Sufficiency

 Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing
factual sufficiency and determine whether the proof of guilt is so obviously weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Zuliani, 97 S.W.3d at 595; Johnson, 23 S.W.3d at 11; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997); Harris v. State, 133 S.W.3d 760, 764 (Tex.
App.--Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is one which is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. Santellan v. State, 939 S.W.2d 155, 165
(Tex. Crim. App. 1997). 

 Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and
set aside the verdict merely because we feel a different result is more reasonable. Clewis, 922
S.W.2d at 135. Instead, we will only ensure that the jury reached a rational decision and will find
the evidence factually insufficient only when it is necessary to prevent manifest injustice. Johnson,
23 S.W.3d at 8-9, 12; Clewis, 922 S.W.2d at 133, 135; Cuong Quoc Ly v. State, 273 S.W.3d 778,
783 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd) (citing Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993)). 

 C. The Hypothetically-Correct Jury Charge

 Our analysis of whether the evidence is legally and factually sufficient is measured against
the elements of the offense with the same kind of analysis as that applied in the test for a
hypothetically-correct jury charge for the case. (7) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The
hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried." Malik,
953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. Grotti, 273 S.W.3d at
281. 

 A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury
to another. Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2009). Therefore, it was necessary
for the State to prove beyond a reasonable doubt that (1) James (2) knowingly, intentionally, or
recklessly (3) caused bodily injury (4) to another person. Unless other findings (not applicable to
this case) are made, assault is a class A misdemeanor punishable by confinement in jail for a term
not to exceed one year. Tex. Penal Code Ann. § 12.21 (Vernon 2003), § 22.01(b). 

 In order for the court to have made an affirmative finding that family violence was involved,
it was necessary for it to have found that the victim was a person whose relationship with James fit
into one of the categories described by Sections 71.0021(b), 71.003, or 71.005 of the Texas Family
Code. Tex. Fam. Code Ann. §§ 71.0021(b), 71.003, 71.005 (Vernon 2008).

 D. Analysis 

 Even erroneously admitted evidence is considered when addressing a sufficiency challenge. 
Moore, 169 S.W.3d at 477. From an evidentiary standpoint, Cooks's 9-1-1 call established that
"Cedric James has jumped on [her] daughter." Cooks relayed Valentine's statement that Valentine
had just been arguing with James. The 9-1-1 call and Valentine's statements to Mills demonstrated
that Valentine had just been assaulted. Mills concluded that James was at the center of the
investigation. Pictures of Valentine with her swollen eye evidenced the injury she sustained. When
reviewing this evidence in the light most favorable to the verdict, we conclude a rational jury could
have found beyond a reasonable doubt that after an argument, James intentionally, knowingly, or
recklessly caused bodily injury to Valentine. Further, even when reviewing the evidence in a neutral
light, we cannot say that proof of James's guilt is so obviously weak as to undermine confidence in
the verdict, or is greatly outweighed by contrary proof so as to be clearly wrong and unjust. The
evidence was legally and factually sufficient to support the jury finding that James committed
assault. 

 Further, we believe the trial court was correct in its affirmative finding of family violence. 
"'Family violence' means: . . . (3) dating violence, as that term is defined by Section 71.0021." Tex.
Fam. Code Ann. § 71.004 (Vernon 2008). "'Dating violence' means an act by an individual that is
against another individual with whom that person has or has had a dating relationship and that is
intended to result in physical harm, bodily injury, assault . . . ." Tex. Fam. Code Ann. § 71.0021(a)
(Vernon 2008). (8) It is undisputed that James and Valentine were "individuals who have or have had
a continuing relationship of a romantic or intimate nature" and were, therefore, in a dating
relationship. Tex. Fam. Code Ann. § 71.0021(b) (Vernon 2008). Since the jury determined that
James assaulted Valentine, the trial court was justified in making the affirmative finding that family
violence had occurred. 

V. Conclusion 

 We affirm the trial court's judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: October 22, 2009

Date Decided: November 5, 2009


Do Not Publish

1. The affidavit and sworn statement were not introduced as evidence. 
2. James points to Cooks's testimony denying that Valentine was excited. The word "excited"
has many connotations. We believe the trial court was in the best position to determine how Cooks
interpreted the term based on Cooks's expressions during her testimony. 
3. We also conclude that since Valentine's statements were excited utterances, counsel was not
ineffective in failing to lodge a hearsay objection to all statements. 
4. "[I]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with
the witnesses against him." U.S. Const. amend. VI.
5. The admission of an out-of-court statement violates the Confrontation Clause only if the
witness does not actually testify at trial. See Mumphrey v. State, 155 S.W.3d 651, 657 n.1 (Tex.
App.--Texarkana 2005, pet. ref'd).
6. No objection (either as to hearsay or on Confrontation Clause grounds) was made to the
introduction of the content of this call and a failure to object to its admission was not raised as a
point on appeal as an example of ineffective assistance of counsel. 
7. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
8. Under these statutes, the trial court was not required to find that James and Valentine were
living in the same household before finding family violence.