Opinion issued August 19, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS.
01-09-00215-CR

          01-10-00196­CR

————————————

Loyde D. Waggoner, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 217th District Court

Angelina County, Texas



Trial Court Case No. 28,174 (Counts I & II)

 



 

MEMORANDUM OPINION

          Appellant
Loyde D. Waggoner was convicted by a jury of two counts of aggravated assault
(count I, appellate case number 01‑09‑00215‑CR; count II, appellate
case number 01‑10‑00196‑CR). 
See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2009).  Waggoner
pleaded true to prior felony convictions for aggravated assault and indecency
with a child, and the jury assessed punishment at imprisonment for 60 years for
each count, to run concurrently, and a $10,000 fine for both counts.  See
Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2009).  Waggoner brings three issues, claiming legal and factual
insufficiency of the evidence and ineffective assistance of counsel.[1]  We affirm.

Background

Trampas Smith
testified at trial that he heard his neighbor cry for help.  He saw a woman on the porch of the next‑door
house who was bloody and bruised.  At her
request, Smith called 9‑1‑1.

Chief J.
Burns of the Hudson Police Department testified that he responded to the 9‑1‑1
call and found the woman on the porch. 
Chief Burns observed a large amount of blood on her clothes.  He went inside the house and found another
woman, who was also very bloody.  The
second woman was very agitated and unable to speak.

Investigator
C. Wells of the Angelina County Sheriff’s Department also responded to the 9‑1‑1
call.  He testified that he examined the
house and found multiple blood stains on carpet, clothes, and other items
including a billy club.  In the bathroom,
Investigator Wells found a baseball bat lying in the tub.  The bat had reddish stains on it, but the bat
was never sent to a laboratory to confirm whether the stains were blood.

Investigator
Wells testified that he was trained in using a billy club when he was a Houston
Police Officer.  During that training he
was instructed not to hit someone in the head with the club.  Investigator Wells also testified that he
worked on a previous case in which a baseball bat was used to strike the
victim, who died from the injuries.

S. Osburn,
the complainant in Count I, testified at trial. 
Osburn is the aunt of M. Thompson, the complainant in Count II.  Thompson is a woman with autism and an
intellectual disability.  She does not
speak.  Osburn discovered in 2006 that
Thompson was a resident at the Lufkin State School, and Osburn moved to the
Lufkin area hoping to become Thompson’s guardian.  The school allowed Osburn to take Thompson
out for a couple of days at a time to stay with her.

To be near
her niece, Osburn rented a room from Waggoner in May 2008.  Osburn brought Thompson over to Waggoner’s
house to visit approximately three times, and she testified that she felt safe
in the house.  The assaults occurred the first
time that Osburn brought Thompson to the house to spend the night.

Osburn
testified that she was sleeping in the living room when Waggoner woke her up
early in the morning of June 13, 2008. 
She went outside to smoke a cigarette and shortly thereafter heard
Thompson moan.  Osburn ran back in the
house, and Waggoner told her that he thought Thompson had fallen.  As Osburn went back to her bedroom to find
Thompson, she was hit in the head and passed out.  Osburn testified that Waggoner hit her from
behind and that she did not see what was in Waggoner’s hands.

Osburn woke
up about four hours later, with her hands tied behind her back.  She testified that Waggoner was acting
“crazy” and told her he needed thousands of dollars.  Osburn managed to free her hands, and when
Waggoner left the room to make a telephone call, she crawled out of a bedroom
window into the back yard and began yelling. 
Waggoner grabbed her and forced her back into to the house, where she
passed out.

During one
period when Osburn was conscious, she offered to go to the bank with Waggoner
and get cash for him.  Waggoner helped
Osburn to write a check.  Another time when
Osburn awoke, Waggoner was choking Thompson and saying, “She won’t shut
up.”  Osburn told Waggoner to leave
Thompson alone, and he left, taking Osburn’s credit cards and car.

After
Waggoner left, Osburn took a baseball bat she saw and hid it in the
bathroom.  She eventually crawled to the
front door and out on the porch, where she cried for help.  Osburn testified that she was hospitalized for
a week for her injuries.

Deputy D.
Childress of the Angelina County Sheriff’s Department also responded to the 9‑1‑1
call.  When he arrived, Osburn was being
taken to the hospital.  Deputy Childress
saw Thompson come out of the house, and she had bruises around her eyes and was
bloody.

Deputy
Childress saw a nearby vehicle being driven that fit the description of
Osburn’s car, and he and another deputy, Lieutenant J. York, followed.  Deputy Childress eventually found Osburn’s
car flipped over in a ditch and arrested Waggoner.

Sergeant B.
Riley of the Angelina County Sheriff’s Department testified that he interviewed
Osburn and Thompson at the hospital.  He
was unable to get a statement from Thompson as she does not speak, but Osburn
was conscious and spoke with him.  Over
objection, Sergeant Riley testified that Osburn stated that she believed
Waggoner hit her with a baseball bat.  On
cross‑examination, Sergeant Riley stated that no tests were done on the
baseball bat to determine the presence of blood, hair, or fingerprints.

Lieutenant L.
Arnold of the Lufkin Fire Department testified that he was the paramedic who
responded to the incident.  Lieutenant
Arnold described Osburn as having multiple injuries to her head and scalp that showed
signs of trauma.  Over objection,
Lieutenant Arnold testified that Osburn told him that she was hit in the head
with a baseball bat.

Nurse S. Boston
testified at trial that she examined Thompson in the emergency room.  Boston said that Thompson’s head injuries
were consistent with being struck by an object that caused blunt trauma and
that these types of blows were capable of causing serious bodily injury or
death.  On cross‑examination,
Boston admitted that she had no personal knowledge of how Thompson’s injuries
were inflicted and that it was possible that the injuries were caused by a fist.

Angelina
County Sheriff K. Henson testified at trial that he responded to the
incident.  At the arrest scene, Waggoner
asked Sheriff Henson if “they” were dead.  After taking Waggoner to the office, Sheriff
Henson gave Waggoner his Miranda
warnings and conducted a recorded interview. 
During the interview, Waggoner admitted to Sheriff Henson that he had
used approximately $2,000 worth of cocaine. 
Sheriff Henson testified at trial that it appeared Waggoner was using
crack cocaine.

At trial, the
recorded interview of Waggoner was played for the jury without objection, and
in that interview Waggoner stated that he struck the complainants with a billy
club.

Analysis

Legal sufficiency of the evidence

          In
his first issue, Waggoner contends the evidence is legally insufficient in both
Counts I and II to establish that he committed aggravated assault.  Waggoner specifically argues that the State
failed to prove that Waggoner struck either Osburn or Thompson with a deadly
weapon, i.e., a bat or club, as alleged in the indictment.

          The
standard of review for legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). 
The jury is the exclusive judge of the credibility of witnesses and of
the weight of their testimony.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), overruled on other grounds by Laster
v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).

          Waggoner
concedes on appeal that he admitted in his recorded interview with Sheriff Henson
that he used a billy club to strike Osburn and Thompson.  Nonetheless, Waggoner contends that his
statement should have been challenged at trial and in essence asks this Court
to review his legal­‑sufficiency issue without considering his
admission.  However, in conducting a
sufficiency review, we must consider all the evidence presented to the jury,
whether rightly or wrongly admitted.  See, e.g., Thomas v. State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988).  We, therefore, must consider Waggoner’s
admission, as well as Sergeant Riley’s and Lieutenant Arnold’s testimony that
Osburn said Waggoner hit her with a baseball bat.

          Reading
Waggoner’s brief broadly, there is also a suggestion that the evidence was
legally insufficient to prove that either the baseball bat or billy club was a
deadly weapon.  A deadly weapon is
defined as “anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury.” Tex.
Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).  To hold the evidence legally sufficient to
sustain a deadly‑weapon finding, the evidence must demonstrate that: (1)
the object meets the statutory definition of a dangerous weapon; (2) the deadly
weapon was used or exhibited during the transaction from which the felony
conviction was obtained; and (3) other people were put in actual danger.  See
Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005).

Waggoner specifically
suggests that because the State indicted him for aggravated assault based on using
a deadly weapon (Penal Code § 22.02(a)(2)), and not based on causing serious bodily
injury (Penal Code § 22.02(a)(1)), the State has somehow failed to prove that the
baseball bat or billy club was in the manner of its use or intended use capable
of causing death or serious bodily injury. 
See Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2009).

Investigator
Wells testified that he worked on a previous case in which a baseball bat was
used to strike the victim, who died from the injuries.  Nurse Boston also testified that Thompson’s
head injuries were consistent with being struck by an object that caused blunt
trauma and that these types of blows were capable of causing serious bodily
injury or death.  Taken together with the
evidence that Waggoner hit Osburn with either a baseball bat or billy club, and
the evidence that Waggoner hit Thompson with a billy club, we hold there is
legally sufficient evidence to support the judgment of conviction.

We overrule the
first issue. 

Factual sufficiency of the evidence

In his second
issue, Waggoner contends the evidence is factually insufficient in both Counts
I and II to establish that he committed aggravated assault because (1) the
evidence is insufficient to prove that a deadly weapon was used and (2) someone
other than Waggoner may have hit the complainants.  When conducting a factual‑sufficiency
review, we view all of the evidence in a neutral light.  Cain v. State, 958 S.W.2d 404,
408 (Tex. Crim. App. 1997).  We will set
the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the
great weight and preponderance of the evidence. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we
cannot conclude that a conviction is “clearly wrong” or “manifestly unjust”
simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we
cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Id. 
Before finding that evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury’s verdict. 
Id.  In conducting a
factual‑sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

          We
may not substitute our judgment for that of the fact‑finder.  King v. State, 29 S.W.3d 556,
563 (Tex. Crim. App. 2000).  The fact‑finder
alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact‑finder’s evaluation of
credibility and demeanor.  Cain,
958 S.W.2d at 408–09.  As the judge of
the credibility of the witnesses, the fact‑finder may choose to believe
all, some, or none of the testimony presented. 
Id. at 407 n.5.  The
standard for reviewing the factual sufficiency of the evidence is whether,
after considering all of the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond reasonable doubt.  Watson, 204 S.W.3d at 415.

Waggoner specifically
points to the following testimony to undermine the jury’s verdict: (1) Boston’s
testimony that a fist could have caused Thompson’s injuries and (2) Osburn’s
testimony that Waggoner hit her from behind and that she did not see what was
in Waggoner’s hands.  He also argues that
the State did not perform any laboratory tests on the baseball bat, billy club,
or reddish stains found in the house, but he does not cite any requirement that
the State was required to do so.

Considering
all of the evidence in a neutral light, the jury could have found that the
billy club caused Thompson’s injuries and that the inconsistencies in Osburn’s
statements were a result of her head injuries. 
Further, even without Waggoner’s admission to Sheriff Henson, the jury
could have found that the evidence established that Waggoner was the person who
assaulted the complainants.  Accordingly,
we cannot say that the jury’s verdict is against the great weight and
preponderance of the evidence.

We overrule Waggoner’s
second issue.

Ineffective assistance of counsel

In his third
issue, Waggoner claims his trial counsel was ineffective in failing (1) to object
at trial to the statement Waggoner gave to Sheriff Henson and (2) to request a
hearing on the voluntariness of his statement. 
To be entitled to a new trial based on ineffective assistance, a
defendant must show that counsel’s performance was so deficient that he was not
functioning as acceptable counsel under the Sixth Amendment and that there is a
reasonable probability that, but for counsel’s error, the result of the
proceedings would have been different.  See
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984); Hernandez v. State, 726 S.W.2d 53, 55–57 (Tex. Crim. App.
1986).  The defendant bears the burden to
prove ineffective assistance of counsel. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

          Allegations of ineffective assistance
of counsel must be firmly founded in the record.  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  The review
of trial counsel’s representation is highly deferential and presumes that
counsel’s actions fell within a wide range of reasonable professional
assistance.  See Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  When the record is silent on the motivations
underlying trial counsel’s tactical decisions, the appellant usually cannot
overcome the strong presumption that trial counsel’s conduct was
reasonable.  See id.

          In most cases, the record on direct
appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel’s actions.  See Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  Because the reasonableness of trial counsel’s
choices often involves facts that do not appear in the appellate record, the
Court of Criminal Appeals has stated that trial counsel should ordinarily be
given an opportunity to explain his actions before a court reviews that record
and concludes trial counsel was ineffective. 
See Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App.
2002).  A petition for writ of habeas
corpus usually is the appropriate vehicle to investigate ineffective-assistance
claims.  See Mitchell v. State,
68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 
Without proof from the defendant that there is no plausible professional
reason for trial counsel’s act or omission, the reviewing court may not
speculate on why counsel acted as he did. 
See Bone, 77 S.W.3d at 835–36.

On appeal, Wagoner argues that his trial counsel failed the
first prong of Strickland—i.e., counsel’s performance was so deficient
that he was not functioning as acceptable counsel under the Sixth Amendment—because
counsel did not object to the admission of the recorded statement based on its
voluntariness.  Waggoner concedes that
the recorded statement itself contains the required statutory warnings.  See
Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005) (setting out
statutory requirements for admission of oral statement made as result of
custodial interrogation).  Nevertheless, Waggoner
argues that because Sheriff Henson spoke with Waggoner at the arrest scene and
the sheriff may have been present when Lieutenant Arnold treated Waggoner at
the scene, trial counsel should have requested a Jackson v. Denno hearing to determine the voluntariness of
Waggoner’s possible statements to Sheriff Henson.  See
Jackson v. Denno, 378 U.S. 368, 380,
84 S. Ct. 1774, 1783 (1964) (holding that defendant objecting to admission of
confession is entitled to fair hearing in which both underlying factual issues
and voluntariness of confession are actually and reliably determined).

Waggoner also suggests that even though the recorded
statement itself contains the required statutory warnings, the statement was
nonetheless involuntary.  Without
expressly admitting on appeal that he had used cocaine on the date of the
incident, Waggoner suggests that trial counsel’s cross‑examination of
Sheriff Henson, in which counsel asked the sheriff if Waggoner appeared to be
on a cocaine “binge” when he gave his recorded statement, is sufficient evidence
that the statement was involuntary to demonstrate that trial counsel was
ineffective in not requesting a Jackson
v. Denno hearing.

We disagree.  Waggoner
presents no evidence to demonstrate that trial counsel could not have had any
plausible professional reasons for his actions in this regard, as no
evidentiary motion for new trial was filed. 
See Bone, 77 S.W.3d at 835–36.  On appeal Waggoner does discuss his trial
counsel’s cross‑examination of Sheriff Henson, which suggests that
Waggoner may have owed drug dealers money for crack cocaine and that the
dealers could have been the people who assaulted the complainants.  We also note that Sheriff Henson testified on
cross‑examination that Waggoner “had a lot of his facilities” during the
statement.

Mere identification of instances in which counsel did not
make an evidentiary objection, without more, does not establish deficient
performance of counsel for the purposes of an ineffective-assistance
claim.  See, e.g., Thomas v. State,
886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (“Isolated
failures to object to certain procedural mistakes or improper evidence or
argument do not constitute ineffective assistance of counsel. . . .  Failure to object to inadmissible testimony
can constitute a sound and plausible trial strategy.” (citing Davis v. State, 830 S.W.2d 762, 765
(Tex. App.—Houston [1st Dist.] 1992, pet. ref’d)).  Waggoner has not offered any authorities or
argument to establish that trial counsel could not have had any plausible
professional reasons for his failure to object. 
See Bone, 77 S.W.3d at 835–36.

It is the defendant’s burden to prove there is no plausible
professional reason for trial counsel’s act or omission.  See Bone, 77 S.W.3d at
836.  Without an evidentiary motion for
new trial, we are not persuaded, based on the existing appellate record and
argument, that trial counsel could not have had any plausible professional
reasons for his actions.  See id. (stating that counsel should ordinarily be
accorded opportunity to explain his actions before being condemned as
unprofessional and incompetent). 
We therefore hold that Waggoner has not met his burden under the first
prong of Strickland to prove that his trial counsel was deficient.  Because failure to make the required showing
of either deficient performance or sufficient prejudice defeats an
ineffectiveness claim, we do not reach Waggoner’s argument on the second prong
of Strickland.  See Thompson,
9 S.W.3d at 813.

We overrule Waggoner’s third issue.

Conclusion

          We
affirm the trial court’s judgment.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]
              The
Texas Supreme Court transferred this appeal from the Court of Appeals for the
Twelfth District of Texas.  Misc. Docket
No. 08-9177 (Tex. Dec. 15, 2008); see Tex.
Gov’t Code Ann. § 73.001 (Vernon 2005) (authorizing transfer of cases).  We are unaware of any conflict between
precedent of the Court of Appeals for the Twelfth District and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.