Patrick Bovier THOMAS,

v.

The STATE of Texas.

No. 01–93–00138–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1994.

Rehearing Overruled Oct. 6, 1994.

Discretionary Review Refused Jan. 25, 1995.

Andrew L. Jefferson, Jr., Houston, for appellant.

John B. Holmes, Jr., Dan McCrory, Denise Nassar, Harris County, for appellee.

Before OLIVER–PARROTT, C.J., and HEDGES and ANDELL, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Patrick Bovier Thomas, guilty of murder, found an enhancement paragraph to be true, and assessed punishment at life in prison and a $10,000 fine. We affirm.

### Facts

Appellant and the deceased, Francesia Larose, began dating when they were in high school. According to several witnesses' testimony, the relationship was troubled, and appellant assaulted and harassed Larose on more than one occasion. On May 2, 1991, appellant entered the office where Larose worked, walked up behind her, fatally shot her in the head, and then shot himself in the head. Several coworkers witnessed the killing. At trial, appellant did not deny killing Larose; he testified, rather, that he did not remember shooting either Larose or himself.

### Expert testimony on appellant's state of mind

■ In point of error one, appellant contends that the trial court erred in refusing to allow Dr. Walter Quijano, a clinical psychologist, to testify during the guilt-innocence phase of the trial about appellant's state of mind at the time of the shootings.[1] Appellant contends that Dr. Quijano's testimony should have been admitted under TEX. PENAL CODE ANN. § 19.06(a) (Vernon Supp.1994).

At the conclusion of the evidence, defense counsel stated the following to the trial court:

For the purposes of the record, Your Honor, I'd like to call Dr. Walter Quijano, for the purposes of making a bill of exceptions, based on what his testimony would have been, had he been allowed to testify

in the guilt or innocence phase of Patrick Bovier Thomas.

Dr. Quijano testified that he met with appellant for six hours after the shooting incident. He stated that appellant's mental and emotional state at the time of the shootings was more accurately described by the "diagnostic impression called adjustment disorder with mixed emotional features." The disorder includes emotional states such as anxiety, depression, and a sense of helplessness. As a result of the disorder, appellant's "emotion was overwhelming enough to reduce the degree of reasoning or rationality" at the time of the shootings. Dr. Quijano further testified that such an affliction would affect appellant's ability to intentionally and knowingly carry out an act. On cross-examination, Dr. Quijano admitted that appellant was sane when he killed Larose and was competent to stand trial.

Citing *Fielder v. State,* 756 S.W.2d 309 (Tex.Crim.App.1988), appellant contends that Dr. Quijano's testimony was admissible under TEX.PENAL CODE ANN. § 19.06(a) (Vernon 1994). That section provides:

In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

In *Fielder,* the defendant claimed self-defense in her prosecution for the killing of her husband. She testified that her husband had sexually abused her for several years. 756 S.W.2d at 311. She claimed that she feared for her life during their final altercation and that fear was reasonable in light of their previous, violent interaction. *Id.* at 312–13. On cross-examination, she acknowledged that she had remained in the marriage despite the continuing abuse, implying that the abuse had been neither odious nor fear-inspiring. *Id.* at 313. Therefore, the State argued, the

---

1. Dr. Quijano testified at the punishment phase of trial.

reasonableness of her fear based on their previous relationship was called into question.

To rebut that inference promoted by the State, the defendant offered the testimony of Dr. Matheeney, a marriage and family counselor, to explain why a woman who had endured or experienced abuse such as the defendant had would remain in a marital relationship. *Fielder*, 756 S.W.2d at 316. The trial court refused to admit the testimony on the basis that it was not relevant to any issue before the jury. *Id.*

The Court of Criminal Appeals noted that appellant had to establish two elements of self-defense: that she reasonably believed that the use of deadly force was immediately necessary, and that a reasonable person in her place would not have retreated. *Fielder*, 756 S.W.2d at 319. It held that the expert's testimony was relevant to the issue of the reasonableness of her fear that the deceased was about to use deadly force against her at the time of the killing. *Id.* at 320.

■ In the case before us, appellant contends that Dr. Quijano's testimony is relevant to the issue whether he intentionally and knowingly killed Larose. What he appears to be arguing is some sort of insanity defense, even though his expert testified that he was sane at the time of the shooting. We recognize that the State is required to establish the requisite intent in order to prove guilt beyond a reasonable doubt. TEX.PENAL CODE ANN. § 6.02(a) (Vernon 1994). We do not believe, however, that absent a plea of insanity or evidence raising that defense, a proper way to negate intent is to show that a defendant does not have the concurrent mental capability to know that his conduct was wrong. *See* TEX.PENAL CODE ANN. § 8.01(a) (Vernon 1994).

The negation of intent is absence of intent; that is an entirely different concept than the incapacity to form an intent due to severe mental disease or defect. The latter we label "insanity." Appellant has attempted to fashion a hybrid defense to criminal responsibili-

ty, one in which he is admittedly sane but unable to form an intent to commit a proscribed act. We do not recognize any such defense as a legal justification for criminal acts.[2] Because there is no such defense upon which appellant can rely, his expert's testimony was not relevant to any issue before the jury. Therefore, the trial court did not err in refusing it.

We overrule point of error one.

### Ineffective assistance of counsel

■ In point of error two, appellant contends that he received ineffective assistance of counsel because his trial counsel did not object to numerous inadmissible evidentiary matters.

■ The two-prong test announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2066–68, 80 L.Ed.2d 674 (1984), is the proper standard to gauge the effectiveness of counsel at the guilt-innocence phase of trial. *Strickland* requires that appellant show that counsel's performance was deficient and that the deficient performance prejudiced or harmed appellant. *Stafford v. State*, 813 S.W.2d 503, 505 (Tex.Crim.App. 1991). To determine whether trial counsel's performance was deficient, we must determine whether, in light of all the circumstances, trial counsel's acts or omissions were outside the range of professional competent assistance. *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). Harm to appellant requires that there exist a reasonable probability that the result of the trial would have been different absent the deficient conduct. *Washington*, 771 S.W.2d at 545.

■ The right to reasonably effective assistance of counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. *Stafford*, 813 S.W.2d at 506. Appellant has the burden of proving by a preponderance of the evidence that he was denied effective assistance of counsel. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.

---

**2.** In *De La Garza v. State*, 650 S.W.2d 870, 876 (Tex.App.—San Antonio 1983, writ ref'd), the court held that "[t]he defense of diminished ca-

pacity has not been recognized by the Texas Legislature nor by the courts."

Crim.App.1985). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819 (Tex.Crim.App.1980), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

 Moreover, to determine whether counsel was ineffective in a criminal proceeding, we must examine the totality of the representation. *Moore,* 694 S.W.2d at 531. Trial strategy will be reviewed by an appellate court only if the record demonstrates that the action is without any plausible basis. *Ex parte Ewing,* 570 S.W.2d 941, 945 (Tex. Crim.App.1978). The fact that another attorney might have pursued a different strategy will not support a finding of ineffectiveness of counsel. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). Moreover, counsel's competency is not to be judged by hindsight or by facts unknown at the time of trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

 Appellant complains that trial counsel did not object to hearsay testimony regarding his past conduct with Larose.[3] In a murder and voluntary manslaughter prosecution, prior threats and altercations between the victim and the accused are admissible to show relevant facts and circumstances surrounding the killing and to show the relationship existing between the two parties. TEX.PENAL CODE ANN. § 19.06; *Bedford v. State,* 703 S.W.2d 775, 783 (Tex.App.—Houston [14th Dist.] 1985, no pet.) (citing *Hall v. State,* 640 S.W.2d 307 (Tex.Crim.App.1982)). However, section 19.06 does not extend the rules of evidence to admit hearsay testimony that would be otherwise inadmissible. *Werner v. State,* 711 S.W.2d 639, 643–44 (Tex. Crim.App.1986).

Isolated failures to object to certain procedural mistakes or improper evidence or argument do not constitute ineffective assistance of counsel. *Davis v. State,* 830 S.W.2d 762, 765 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Failure to object to inadmissible testimony can constitute a sound and plausible trial strategy.

In *Ahmadi v. State,* 864 S.W.2d 776, 783 (Tex.App.—Fort Worth 1993, pet. ref'd), the court determined that the trial counsel's decision not to object to improper testimony can be a plausible trial strategy when counsel desires to create the appearance of being open and completely honest with regard to all questions. Defense counsel evidenced a similar trial strategy in this case. He described his strategy of being open and honest with the jury when he stated at closing:

> I don't think you saw a lot of us jumping—the two attorneys jumping up and down, objecting to things that were said and done, and the technicalities of this case, because I think we both tried to present it to you in a way so that you could hear all the facts. Because it's not the typical thing that usually happens....

Based on *Stafford,* his failure to object could have constituted a plausible trial strategy designed to persuade the jury with his appearance of candor, and by inference his confidence, that the evidence elicited was not harmful.

An even more plausible trial strategy becomes apparent from a careful reading of the entire record. Trial counsel could not deny that appellant killed Ms. Larose. Even his own expert would not testify that his client was insane at the time of the shooting. His only option was to mitigate punishment by seeking conviction of a lesser charge. He hoped to persuade the jury that it should convict appellant of voluntary manslaughter instead of murder.

A person commits voluntary manslaughter if he causes the death of an individual under the immediate influence of sudden passion arising from an adequate cause. TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). "Sudden passion" is passion directly caused by and arising out of provocation by the individual killed, "which passion arises at the time of the offense and is not solely the result of former provocation." TEX.PENAL CODE ANN. § 19.04(b). "Adequate cause" is "cause that

---

3. Some of the disputed evidence is not hearsay or falls into an exception to hearsay. However, some of the statements are inadmissible hearsay.

would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX.PENAL CODE ANN. § 19.04(c).

During closing argument, defense counsel told the jury why appellant should only be convicted of voluntary manslaughter:

From [1986], when they first met as kids, in high school, all the way up to the end, whether you call it a love-hate relationship, or whatever you call it, these two were determined to be together. Whether the father wanted them together, whether Francesia's mother wanted them to be together, or whether Patrick Thomas's mother wanted them to be together, it's all irrelevant. They wanted to be together. And if you check and notice, from all the testimony given, every time, except one, that Francesia Larose filed charges, her father was present, every time except one.

Even the most serious charges that she filed against him, leading up to this altercation, if you look at this, she was dropping. Nobody here was able to testify that he was brought and specifically charged with any offense that he was alleged to have done. She filed charges on him. She dropped charges. She filed charges on him. She dropped charges. She lived together with him. She went home. She lived together with him. She went home. She lived together with him. She went home. And I submit to you, that this affects Francesia, but it also affects Patrick Thomas also.

You must get into his head. Because you're looking at guilt and innocence, based on his state of mind, whether he knowingly or intentionally committed murder, or whether he committed voluntary manslaughter. And to do that, you have to get in and look at it from his point of view. . . .

Adequate cause. Sudden passion. Does not have to be a particular adequate cause. It doesn't have to be one particular event. It doesn't have to be something that just so triggers you, that it makes you mad. That was an example that was given in voir dire by the State. It could be a series of

events, that over a period of time, rises sudden passion within you, and adequate cause within you. And I submit to you that the charges re-filed, and taken away, re-filed, sending him—whether they are going to send him to prison or not, the relationship itself, as tumultuous as it was, it arose adequate cause and sudden passion in Patrick Thomas's mind.

Defense counsel told the jury that appellant possessed the requisite sudden passion and adequate cause to be guilty only of manslaughter. Appellant's sudden passion and adequate cause were fueled by his tumultuous relationship with the deceased and the numerous charges she had filed against him. Counsel's closing evidenced his trial strategy: to allow testimony in regarding appellant's past relationship with Larose so that the jury could understand his state of mind at the time he fatally shot Larose.

Even if defense counsel's failure to object to hearsay testimony was deficient conduct, the jury heard overwhelming, properly admitted, evidence of appellant's guilt. *Davis*, 830 S.W.2d at 766. Appellant had a past history of violence toward Larose. The day before the shooting, appellant bought bullets for his gun. Larose's manager from work testified that appellant called him the night before the shooting and threatened to kill Larose and himself. The following day, two coworkers saw appellant shoot Larose and a third coworker saw appellant shoot himself. We find that there is no reasonable probability that the result of appellant's trial would have been different had the hearsay testimony been excluded. *Washington*, 771 S.W.2d at 545.

We overrule point of error two.

### Appellant's testimony on his state of mind

█ In point of error three, appellant contends the trial court erred in refusing to permit him to testify about his intent and knowledge. On redirect examination, defense counsel asked appellant, "Did you intentionally and knowingly go up there to shoot and kill Francesia Larose?" The trial court then sustained the prosecutor's "bol-

stering" objection, which concluded appellant's testimony.

 A trial court's refusal to allow a defendant to testify as to his state of mind at the time of committing murder without malice has been held to be error. *Burnett v. State,* 466 S.W.2d 561, 562 (Tex.Crim.App. 1971) (defendant's testimony that he had no intention of killing the deceased excluded). Because we conclude that the trial court erred in excluding appellant's testimony, we must determine if the error was harmful. The test to determine if an error is harmful is whether there is a reasonable possibility that the evidence might have contributed to the conviction or punishment. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989); Tex.R.App.P. 81(b)(2). The question is "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Harris,* 790 S.W.2d at 588.

The trial court's error in excluding appellant's answer to whether he intentionally killed Larose was harmless. On direct examination, defense counsel asked appellant whether he shot Larose, and he replied, "They say I did. I'm not sure." [4] On cross-examination, the prosecutor asked appellant:

Q: [W]hy did you just testify about your prior relationship with [Larose] and seeing her and arguing with her?

What does that have to do with why you killed her?

A: I don't—you didn't—I didn't have no reason to kill no one. It's not a matter of if you have a reason to kill someone. *I didn't plan to kill no one.*

Q: *Well, actually, you did plan to kill her; didn't you?*

A: *No.*

Later on cross-examination, appellant testified to the following:

Q: I'm saying, she never had the opportunity to drop those charges, because you killed her.

4. Appellant contended at trial that he had no memory of the shooting incident or the events

A: No. I didn't—I don't—I don't even know if I killed her. That's what people told me.

Q: So you have a pretty good memory about everything that lead up to this, but you just don't have any memory about killing her?

A: No, ma'am.

Q: *And you thought about it ahead of time; didn't you?*

A: *No, ma'am. No, ma'am.*

. . . .

Q: When was the first time you started thinking about the idea of killing [Larose]?

A: I never—

Q: It wasn't that day, was it?

A: *I never thought about killing [Larose].*

Appellant's testimony that he did not plan or intend to kill Larose was in evidence. Therefore, the trial court's exclusion of his answer to defense counsel's question was not harmful error.

We overrule point of error three.

We affirm the trial court's judgment.

leading up to it that day.