

**NUMBER 13-07-00339-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**NORMA JEAN DORNAK,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 24th District Court
of Victoria County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

Appellant, Norma Jean Dornak, was convicted of assault of a public servant, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon 2003). Dornak's sentence of two years' imprisonment was suspended and she was placed on community supervision for five years. Dornak now appeals, contending that (1) the trial court erred in not including a question in the jury charge on lack of capacity, and (2) the trial court made improper comments on the weight of the evidence. We affirm.

## I. BACKGROUND

Dornak was indicted on July 8, 2006 for the offense of arson. *See id.* § 28.02 (Vernon Supp. 2007). According to the record, Dornak was incarcerated in the Victoria

County jail for that offense at the time of the events which form the basis of this appeal. According to an affidavit executed by Anna Escalona, a nurse for the Victoria County Sheriff's Office, at approximately 2:00 a.m. on August 22, 2006, Dornak began hitting and kicking the door and walls of her "Medical Detox" cell at the Victoria County jail. Dornak demanded that Escalona and her colleague, Detention Officer Shawn Henderson, open the cell door. Because Dornak would not cease hitting and kicking the cell door, Henderson called Sergeant Donna Frontz for assistance. After Dornak had calmed down, Sergeant Frontz opened the tray slot to Dornak's cell and attempted to talk to Dornak. Because Dornak would not respond, Sergeant Frontz opened the cell door to check on her. At that point, Dornak, who had been sitting behind the door where she could not be seen, put her foot out to stop the cell door from closing. Sergeant Frontz tried to push Dornak away from the door, but Dornak came at Sergeant Frontz, started to scratch at her arms, and attempted to bite her. Dornak was eventually restrained and medical assistance was rendered to Sergeant Frontz. On September 28, 2006, a Victoria County grand jury indicted Dornak on a single count of assault of a public servant. *See id.* § 22.01(b).

On October 24, 2006, Dornak filed a "Motion for Expert Psychological Assistance" noting that Dornak has an "extensive history of mental or emotional disorders" and requesting that the trial court authorize the retention of Jack Greeson, Ph.D., to assist in her defense. On December 13, 2006, Dornak filed a "Motion for Competency Evaluation" noting that Dr. Greeson did not believe that Dornak was presently competent to assist in her defense and asking the trial court to appoint a disinterested expert to examine Dornak. *See* TEX. CODE CRIM. PROC. ANN. art. 46B (Vernon Supp. 2007). The trial court ordered on December 18, 2006 that Rahn K. Bailey, M.D., perform an examination of Dornak to determine her competency to stand trial. Basing its decision on Dr. Bailey's report and Dornak's waiver of a jury finding as to competence, the trial court on February 6, 2007 rendered an order finding Dornak competent to stand trial.

A trial on the merits was conducted before a jury on April 24 and 25, 2007. The jury

found Dornak guilty and assessed a punishment of two years' imprisonment. The sentence was suspended and Dornak was placed on community supervision for five years. This appeal ensued.

## II. DISCUSSION

### A. Charge Question on Lack of Capacity

By her first issue, Dornak contends that the trial court erred in not including in the jury charge a question as to Dornak's capacity. At trial, Dornak's counsel moved for a directed verdict, referring to Dornak's alleged lack of capacity and contending that the State had failed to prove that Dornak possessed the requisite mental state to be convicted of the offense. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (defining assault as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another"). The State countered that the lack of capacity argument was an insanity defense and was barred due to lack of written notice. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.051(a) ("A defendant planning to offer evidence of the insanity defense must file with the court a notice of the defendant's intention to offer that evidence."), 46C.052 (Vernon 2006) ("Unless notice is timely filed under Article 46C.051, evidence on the insanity defense is not admissible unless the court finds that good cause exists for failure to give notice."). The trial court agreed with the State, finding that Dornak's attempt to raise the question of capacity was either (1) an insanity defense barred for lack of notice, or (2) a diminished capacity defense not recognized by Texas law.

In support of her argument, Dornak cites a single case—*Johnson v. State*, 673 S.W.2d 190, 194 (Tex. Crim. App. 1984)—for the proposition that "[i]t is incumbent on the State to prove every element of the offense beyond a reasonable doubt." However, Dornak does not direct us to any authority indicating that this requirement extinguishes the necessity of her compliance with the mandatory notice provisions in article 46C of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.051(a), 46C.052. We note also that, other than the insanity defense for which notice is required

3

under the stated rules, Texas recognizes no "diminished capacity" defense to defeat the element of mens rea at the guilt-innocence phase of trial. *Jackson v. State*, 115 S.W.3d 326, 328 (Tex. Crim. App. 2003); *see Thomas v. State*, 886 S.W.2d 388, 391 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd) ("We do not believe . . . that absent a plea of insanity or evidence raising that defense, a proper way to negate intent is to show that a defendant does not have the concurrent mental capability to know that his conduct was wrong.").

Because Dornak failed to comply with the notice provisions in article 46C of the Texas Code of Criminal Procedure, the trial court did not err in declining to include in the jury charge a question as to Dornak's capacity. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.051(a), 46C.052. Accordingly, Dornak's first issue is overruled.

## B. Trial Court's Admonition

By her second issue, Dornak contends that the trial court made certain admonitions to her at trial which were improper comments on the weight of the evidence. A trial court improperly comments on the weight of the evidence if it: (1) makes a statement that implies approval of the State's argument; (2) indicates disbelief in the defense's position; or (3) diminishes the credibility of the defense's approach to the case. *See Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App.–Texarkana 1999, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon Supp. 2007) ("[T]he judge shall not . . . at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.").

When Dornak's counsel called her to testify at trial, the trial court admonished Dornak regarding her right against self-incrimination and her right to remain silent. The following exchange then occurred, in the presence of the jury:

> THE COURT:  Ms. Dornak, you have a Fifth Amendment right not to testify in a criminal proceeding against you. Do you

4

understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you waive your Fifth Amendment right and begin to testify in response to questions from your attorney, you may not at any time refuse to answer any question that the State poses to you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And in Texas we have what is called an open cross examination, which means the State can ask you about any events that you've been involved in that may cast a bad light on you and the things that have happened. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And knowing and understanding that once you waive this right and take the stand and begin to testify that you can no longer assert your right not to answer, and that it could not be or may not be in your best interest to do that, do you still want to go forward and testify here today?

THE DEFENDANT: I want the truth to be told.

THE COURT: Okay. That's not what I asked you. Do you understand that it is risky for you to testify in your own behalf?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And do you understand that I think it's not a good idea for you to do that?

THE DEFENDANT: That's your opinion. My opinion is these people don't know me and they need to know me.

THE COURT: Okay. You understand that I'm telling you I don't think it's a good idea?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Okay. And your attorney also has admonished you against testifying, hasn't he?

THE DEFENDANT: I don't . . .

THE COURT: He's told you that he doesn't think it's a good idea for you to get up here and testify, hasn't he?

THE DEFENDANT: Yes, he has.

5

THE COURT:       And in spite of the fact that your attorney has warned you against it and that I'm warning you against it, do you still want to go forward and testify in this trial?

THE DEFENDANT: Based on the facts that are being held back, yes, sir, I do.

Dornak's trial counsel did not object to the trial court's statements at trial. The general rule is that counsel must object to the trial court's comments during trial in order to preserve error. *See* TEX. R. APP. P. 33.1(a); *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000). However, we are authorized to take notice of fundamental errors affecting substantial rights although they were not brought to the attention of the trial court. *See* TEX. R. EVID. 103(d); *Blue*, 41 S.W.3d at 131. A substantial right is affected when an error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Simon*, 203 S.W.3d at 593. Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Simon*, 203 S.W.3d at 593.

Dornak contends that the trial court's comments "had the irreversible effect of poisoning [her] testimony before the jury ever heard a word come out of her mouth . . . ." The State argues that while the trial court's comments were "unfortunate," Dornak's subsequent testimony was so "incredible" that it "completely undermin[ed] any credibility she may have enjoyed without the judge's comments." In support of its contention, the State points to the following testimony offered by Dornak:

Q.    [State's Attorney]  Now, on August 23rd and the 22nd, just the day before it, you were in this cell, correct?

A.    [Dornak]  Yes, sir.

Q.    Okay, now, why were you banging on the door so loud?

A.    Because if – the only thing I remember ever saying to them, I don't know if I was banging on the door, but I know that I kept hollering out

6

and telling the nurses and them that I was falsely arrested and I don't belong in here, that these are bogus charges and that y'all can't keep me locked up in a cell and not – with never . . . I was never read my rights, I was never given my right to a phone call. And for the first two months that I was in jail I was not given my right to an attorney until after I demanded it three times that I have a right to an attorney and that my rights are being violated.

Q. Well, if you were yelling all those things about being falsely held and not being allowed to call your attorney and things like that as you're saying, then you must have known you were in a jail, right?

A. I knew that they had me locked up.

Q. Okay.

A. But what I saw them – what I saw them do during that time when I started going down is I saw them hook a crane to my cell and I saw my cell moved over a bunch of airplanes and loaded onto an airplane by Kyle Janak and Lieutenant Copeland [two local law enforcement officers] and I was dropped off in the ocean because they said that I was going to cause too many problems because they messed up. And so – and there was some guys out there that had saved – that did rescue out there and that's what I saw. And I actually spoke to – Jesus Christ came to me and talked to me about it and told me not to worry about it, that I would be all right.

Given the outlandish nature of Dornak's testimony, we conclude with fair assurance that any error committed by the trial court in admonishing Dornak not to testify had but a slight influential effect on the jury. Any error, therefore, was not fundamental. *See* TEX. R. EVID. 103(d); *Motilla*, 78 S.W.3d at 355; *Simon*, 203 S.W.3d at 593. As such, because Dornak's counsel did not object to the comments at trial, Dornak has not preserved the issue for appeal. *See* TEX. R. APP. P. 33.1(a). Accordingly, her second issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 26th day of June, 2008.

7