

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CARLOS ANTONIO HOLCOMBE, | § | |
| | | No. 08-17-00008-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 41st District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20160D02495) |
| | § | |

## **O P I N I O N**

A jury convicted Carlos Antonio Holcombe of one count of aggravated kidnapping, three counts of aggravated sexual assault of a child, and one count of indecency with a child by sexual contact. During the guilt-innocence phase of trial, Holcombe offered two expert witnesses to testify to his alleged insanity during the commission of the offense. The trial court excluded the proffered testimony from both witnesses. On appeal, Holcombe argues the trial court committed reversible error by excluding these witnesses. We affirm.

## **BACKGROUND**

C.R.,[1] who was twelve years old at the time of the offense, testified to the events that occurred on August 22, 2014. On that day, C.R. and her older sister went to a local high school

---

[1] To protect the identity of the minor-victim, we refer to her as "C.R." *See* TEX. R. APP. P. 9.10(a)(3).

to watch a football game. After arguing with her sister, C.R. left the stands in anger and momentarily sat alone near a parking lot before heading toward a bathroom. As she walked, a man later identified as Holcombe approached and asked for her help in unloading boxes from his truck. C.R. agreed and together they walked to his parked vehicle. As they reached his truck, Holcombe opened a door and grabbed a bag. He then mentioned he had dropped something underneath a seat and asked C.R. to reach for it. C.R. reached but found nothing. Turning to tell him, she then saw he had a gun pointed towards her back and she started to cry. Holcombe told her to stay quiet, to calmly get inside, and to sit on the floor of the front passenger seat with her head down. Fearing for her life, C.R. complied.

Holcombe drove C.R. for a short ride before coming to a stop. Holcombe told C.R. to take off her shirt and pants. Next, he used tape to bind her hands and cover her eyes. From that point, he carried her up a flight of stairs, placed her on a bed, then sexually assaulted her repeatedly while she remained blindfolded. Afterward, Holcombe dressed her but kept her blindfolded. He returned her to his vehicle and he drove as she sat in the same position as before on the floorboard. Eventually, the vehicle came to a stop and he took off her blindfold, gave her back her phone and glasses, and told her to keep her head down and walk forward. As he left, she ran to a group of teenagers who let her know she could find an officer inside a nearby movie theatre. C.R. ran inside, found an officer, and reported what had happened to her. Soon, she was taken to a hospital for treatment. While there, C.R. gave officers a description of Holcombe's appearance and the type of vehicle he was driving.

The next day, after officers watched footage from a security camera posted at the high school, they located Holcombe's vehicle in a nearby neighborhood. Once officers made contact,

Holcombe agreed to give a statement. Later, officers executed a search warrant at his residence where they recovered a black duffel bag containing gloves, duct tape, and a black BB gun altered to look like a handgun. Holcombe was arrested after C.R. identified him in a photo lineup. Forensic testing linked Holcombe's DNA to samples taken from C.R.'s body. Afterward, the State charged Holcombe by indictment with one count of aggravated kidnapping, three counts of aggravated sexual assault of a child, and one count of indecency with a child by sexual contact.

Prior to trial, Holcombe filed a notice of intent to pursue an insanity defense. During opening statements, Holcombe's defense counsel announced he would not dispute the alleged events, but instead, he would show that Holcombe was not guilty of charges brought against him by reason of insanity. Holcombe later called two expert witnesses in support of his defense. First, he called Daniel Daigle, a "traumatologist" and mental health counselor working with the federal detention center in Sierra Blanca, Texas. On voir dire examination, Daigle testified he had diagnosed Holcombe as suffering from complex post-traumatic stress disorder (PTSD); however, he would not be able to offer an opinion on whether Holcombe's condition met the insanity defense requirement of severe mental disease or defect, or whether his condition caused him to commit the offense charged. The State then objected to admission of Daigle's testimony claiming he was not qualified as an expert and his testimony would not be relevant to Holcombe's claimed defense. The trial court sustained the State's objection and excluded Daigle's testimony.

Holcombe next called Dr. James Schutte, a licensed psychologist. On voir dire examination, Dr. Schutte testified that he believed Holcombe did not know his conduct was wrong because he was intoxicated through alcohol and marijuana consumption. Dr. Schutte also testified that Holcombe may have experienced a "dissociative fugue" that caused him not to

3

remember his actions. The State objected to the admission of Dr. Schutte's testimony, arguing it was irrelevant since Dr. Schutte believed Holcombe to be temporarily insane due to voluntary intoxication. The State argued that voluntary intoxication does not constitute a legal defense to a crime. The State also argued that Holcombe's lack of memory of the events was insufficient to support a jury instruction on the issue of insanity. The trial court sustained the State's objection and excluded Dr. Schutte's testimony, reasoning that Dr. Schutte had merely opined that Holcombe was voluntarily intoxicated at the time of the events. The court also refused to submit a jury instruction on the issue of insanity.

Following their deliberation, the jury found Holcombe guilty of all charges and assessed a punishment that included four life sentences for the aggravated kidnapping and aggravated sexual assault of a child counts, and twenty years' imprisonment for the indecency with a child count, with each sentence running concurrently. This appeal followed.

## DISCUSSION

In two issues, Holcombe challenges the trial court's exclusion of his two proposed experts who were proffered during the guilt-innocence phase of trial. In his first issue, Holcombe argues the trial court abused its discretion by failing to qualify Daigle as an expert witness in violation of TEX. R. EVID. 702. In his second issue, Holcombe argues the trial court abused its discretion by excluding Dr. Schutte's testimony on relevance grounds in violation of TEX. R. EVID. 401. These issues will be considered in turn.

## Applicable Law

"Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts." *Ruffin v. State*, 270 S.W.3d 586,

4

591 (Tex. Crim. App. 2008). Criminal responsibility, however, is excused if a defendant proves, by a preponderance of the evidence, the affirmative defense of insanity. *Id*. at 592 (citing TEX. PENAL CODE ANN. § 8.01(a)). Under the Texas Penal Code, "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a). A defendant may present evidence in the form of expert witness testimony to establish that he was legally insane at the time of the commission of the offense. *See*, *e.g., Teel v. State*, No. 02-09-00150-CR, 2010 WL 4812994, at *1–2 (Tex. App.—Fort Worth Nov. 24, 2010, pet. ref'd) (mem. op., not designated for publication). Insanity caused by voluntary intoxication does not constitute a defense to the commission of a crime, but evidence of voluntary intoxication may be introduced during the punishment phase of trial as mitigation evidence. TEX. PENAL CODE ANN. §§ 8.04(a), (b).

Testimony that does not directly rebut the culpable mental state may be excluded at the guilt stage. *Mays v. State*, 318 S.W.3d 368, 381 (Tex. Crim. App. 2010). One manner by which an opponent of proposed expert witness testimony may challenge the admission of that testimony is on relevance grounds. *See Teel*, 2010 WL 4812994, at *2 (considering a trial court's decision to exclude expert testimony under a Rule 401 analysis), *accord Briones v. State*, No. 14-07-01047-CR, 2009 WL 2356626, at *6 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (mem. op., not designated for publication). Evidence is relevant if it makes a fact of consequence in the action more or less likely than it would be without the evidence. TEX. R. EVID. 401; *see Teel*, 2010 WL 4812994, at *1–2. Evidence must be material and probative to be relevant. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). Evidence is material if it proves any fact of

5

consequence to the determination of the action. TEX. R. EVID. 401. The probative force of the evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Accordingly, irrelevant evidence is not admissible. TEX. R. EVID. 402.

Thus, while federal due process guarantees the defendant a meaningful opportunity to present a complete defense, trial courts have wide latitude to exclude evidence which is irrelevant, only marginally relevant, or poses an undue risk of confusion of the issues. *Crane v. Kentucky*, 476 U.S. 683, 689–90, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). This discretion to exclude expert testimony extends to proffered testimony the trial court deems irrelevant. *See Teel*, 2010 WL 4812994, at *1–2.

**Daigle's Testimony**

Turning to Issue One, Holcombe argues the trial court abused its discretion by failing to qualify Daigle as an expert witness in violation of TEX. R. EVID. 702. The decision to admit or exclude expert testimony is reviewed for abuse of discretion, and a trial judge is afforded discretion in determining whether a witness has sufficient qualifications to testify as an expert on a particular topic. *Vela v. State*, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006). As such, an appellate court will rarely disturb a trial court's determination that a witness is or is not qualified to testify as an expert. *Id.*

The Texas Rules of Evidence govern the admissibility of expert witness testimony. A court must decide any preliminary question about whether a witness is qualified. TEX. R. EVID. 104(a). As for admissibility of expert witnesses, Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's

6

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702.

Thus, the proponent of scientific evidence must show, by clear and convincing proof, that the evidence he is proffering is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In determining whether a proposed expert's testimony is admissible, a trial court should make at least three separate inquiries before admitting such testimony: (1) whether the witness is qualified as an expert by reason of knowledge, skill, experience, training, or education; (2) whether the subject matter of the testimony is an appropriate one for expert testimony; and (3) whether the expert testimony actually assists the fact finder in deciding the case. *Vela*, 209 S.W.3d at 131. "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.*

*Qualification*

The first condition implicates the qualifications of a proposed expert witness. An appellate court should consider three criteria when determining whether a trial court abused its discretion in evaluating a witness's qualifications as an expert: (1) whether the field of expertise is complex; (2) how conclusive the expert's opinion is; and (3) how central the area of expertise is to the resolution of the case. *Id.* (citations omitted). The focus is on the "fit" between the subject matter at issue and the expert's familiarity with it, not on the expert's title or specialty; thus, the inquiry should focus on whether a witness's background "goes to the very matter on which the witness [will] give an opinion." *Id.* (citation omitted).

On voir dire examination, Daigle testified he was currently employed as a mental health

counselor with the detention center in Sierra Blanca. Daigle testified he had a bachelor's degree in business and a master's degree in mental health counseling. He described he was nationally certified as a "traumatologist" by the Florida State University Trauma Institute. A traumatologist, he explained, "focuses primarily on all sorts of trauma and anything related to trauma. It's a very rare—I'm probably maybe the only one in El Paso. I don't know."

Daigle clarified that he is not a medical doctor nor a Ph.D. Although he was trained to diagnose PTSD, he described he could not diagnose a traumatic brain injury (TBI). He has not taught any courses or published any articles regarding PTSD or therapy generally. He had testified as an expert witness once before in Florida in a marital case. He admitted he was not familiar with the Texas Penal Code provision providing that voluntary intoxication is not recognized as a defense. He also admitted he did not know whether PTSD is recognized as a severe disease or mental defect as those terms are defined by the Texas Penal Code. Ultimately, Daigle admitted he could not give an opinion on whether Holcombe's actions during the commission of the offense were caused by a severe mental disease or mental defect as defined by the Texas Penal Code.

In his brief, Holcombe concedes that the field of psychology on which Daigle was proffered to testify is "somewhat complex," and therefore the degree of his qualifications should be correspondingly high. Because Daigle testified that he had a master's degree in mental health counseling, was employed as a mental health counselor, and was licensed as a traumatologist by Florida State University Trauma Institute, we believe he was qualified to testify as an expert in psychology and mental health counseling generally. *See Vela*, 209 S.W.3d at 133; *see also Beatley v. State*, No. 10-02-118-CR, 2003 WL 21780952, at \*1–2 (Tex. App.—Waco Jul. 30,

8

2003, pet. ref'd) (mem. op., not designated for publication) (licensed professional counselor holding a master's degree in clinical psychology was qualified to testify as an expert in the area of psychology).

More specifically, however, the relevant question to address in this issue is whether Daigle was qualified to testify on Holcombe's alleged insanity defense. *See Chakravarthy v. State*, 516 S.W.3d 116, 131 (Tex. App.—Corpus Christi 2017, pet. ref'd) (the more conclusive the expert's testimony is, the more important is his degree of expertise); *Vela*, 209 S.W.3d at 131. Even assuming Daigle's credentials were sufficient to qualify him as an expert in mental health generally, those qualifications were not sufficient to go to the "very matter on which [he was] to give an opinion" in this case: whether Holcombe had an alleged mental illness connected with a contested issue of the case. *See Vela*, 209 S.W.3d at 131. Daigle plainly stated he was unable to give an opinion on the relevant inquiry of whether Holcombe's purported mental health led to his inability to know the difference between right and wrong. Daigle admitted that he did not know whether PTSD was recognized as a severe mental disease or defect as defined by the Texas Penal Code; or, whether voluntary intoxication qualified as a defense to the commission of a crime. In other words, because there was a lack of "fit" between Daigle's qualifications and his proffered testimony, this factor weighs against a finding that he was qualified to testify as a defense expert in this case. *See id*. at 133.

### *Reliability*

The second condition we consider is the reliability of a proposed witness's theories and techniques. *See id*. at 131. To be considered sufficiently reliable as to be helpful to a jury, scientific evidence must meet three criteria: (1) the underlying scientific theory must be valid;

(2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id*. at 134; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Factors that could affect a trial court's determination of reliability include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573.

Given that methods of proving reliability vary depending on the field of expertise, proffered testimony from experts in "soft" sciences such as psychology is reviewed under a more flexible standard set out in *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) (en banc). *See Weatherred*, 15 S.W.3d at 542; *Harris v. State*, 424 S.W.3d 599, 602 (Tex. App.—Corpus Christi 2013, pet. ref'd). Under the *Nenno* standard, the trial court should inquire as to whether: "(1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field." *Tillman v. State*, 354 S.W.3d 425, 435–36 (Tex. Crim. App. 2011) (citing *Weatherred*, 15 S.W.3d at 542); *see Harris*, 424 S.W.3d at 602 (applying the *Nenno* standard to expert testimony in the area of psychology).

10

Here, Daigle testified he did not speak with Holcombe near the time the offense was committed. Additionally, he testified he did not review police reports or witness statements, nor did he review Holcombe's medical records, VA records, or jail records. While Daigle evaluated Holcombe for PTSD and other related disorders, he did not conduct any type of standardized psychological testing on him. Instead, he opted to utilize techniques established by the VA National Center for Trauma. These techniques involved asking open-ended questions designed to determine whether a person has a traumatic brain injury (TBI) or post-traumatic stress disorder (PTSD). Questions included one such as "[t]ell me about pain you experience." Daigle testified he diagnosed Holcombe with complex PTSD based solely on self-reported statements that Holcombe had provided him.

Pursuant to the standard provided in *Nenno*, we conclude the trial court did not abuse its discretion in determining that Daigle's voir dire testimony was insufficient to establish the reliability of his proffered testimony. Under the first inquiry, whether the expert's field of expertise is a legitimate one, the record is bare as to what a traumatologist is or does, other than Daigle's testimony that a traumatologist "focuses primarily on all sorts of trauma and anything related to trauma," and that the profession is "very rare." Given the lack of specificity in Daigle's testimony regarding his field of expertise, the trial court could have reasonably concluded that Daigle's expertise as a traumatologist was not properly shown to be legitimate; in fact, we search in vain for any existing Texas case law in which a traumatologist was either proffered as an expert or allowed to testify. While we believe that the subject matter of Daigle's proffered testimony would have been in the field of traumatology and mental health—given that Daigle would have testified about his diagnosis of Holcombe's PTSD—we have no information in the record about

11

whether Daigle properly relied upon or utilized the principles involved in this field because Daigle failed to testify about what principles or techniques are utilized by traumatologists. The only information about what Daigle relied upon in his analysis was his single statement that he used techniques established by the VA National Center for Trauma consisting of open-ended questions. Since the record is otherwise bare as to whether this is an accepted method used by traumatologists, or mental health counselors generally, Holcombe did not establish that Daigle's testimony properly relied upon or utilized the principles involved in traumatology or mental health counseling. Accordingly, under the *Nenno* standard, the record does not establish that the trial court abused its discretion in determining that Holcombe failed to establish the reliability of Daigle's testimony by clear and convincing proof. *See Weatherred*, 15 S.W.3d at 542 (citing TEX. R. EVID. 702); *Harris*, 424 S.W.3d at 601.

*Relevance*

The final condition we consider is relevance, or whether proffered expert testimony will actually assist the fact finder in deciding the case. *Vela*, 209 S.W.3d at 131. Here, Daigle testified that he did not speak to Holcombe near the time of the commission of the offense, but only spoke with him in the preceding four or five months before trial, which took place almost two years later. When asked about what he had learned from his interview with Holcombe, Daigle testified that Holcombe had suffered from child abuse, and suffered symptoms from his military service which indicated the possibility of "dissociative characteristics." According to Daigle, "dissociative" meant that a person was "not there," such that a person might "remove [oneself] from the situation." When asked by the trial court how many times he had met Holcombe, Daigle replied that he had met Holcombe "[n]ine or ten times. I don't know exactly." Daigle stated

12

Holcombe claimed he was not taking any medications at the time he interviewed him but was unsure of whether he had taken them in the past. He also stated that he did not know whether PTSD qualified as a severe disease or mental defect as defined by the Texas Penal Code. Critically, Daigle could not state that Holcombe's alleged mental defect caused him to commit the offense, and while he stated there are times when Holcombe exhibited dissociative symptoms, Daigle could not provide an opinion on whether Holcombe knew right from wrong at the time of the events. In sum, Daigle himself stated he was unable to provide a specific opinion on whether there existed a connection between Holcombe's alleged mental conditions and his commission of the charged offenses.

Based on Daigle's voir dire testimony, we conclude that the trial court did not abuse its discretion in excluding his testimony on relevance grounds. To successfully raise the affirmative defense of insanity, the defendant must show that, as a result of severe mental disease or defect, he did not know that his conduct during the commission of the offense was wrong. TEX. PENAL CODE ANN. § 8.01(a). While Daigle diagnosed Holcombe with PTSD and testified that Holcombe had a history of child abuse and dissociative symptoms, Daigle could not offer an opinion on whether Holcombe had a severe mental disease or defect within the meaning of Section 8.01(a), or whether that disease or defect caused him to commit the offenses charged. In other words, had Daigle testified before the jury, he would not have been able to connect Holcombe's diagnoses to his alleged insanity defense. Lack of this critical link between the diagnoses and Holcombe's claim that he was legally insane rendered Daigle's testimony irrelevant. Likewise, Daigle could not give an opinion on whether Holcombe knew his conduct during the commission of the offenses was wrong, which also rendered his opinion unhelpful to the jury in resolving the issue of whether

13

Holcombe was legally insane.

Thus, Daigle's testimony would not have been helpful to the jury in determining whether Holcombe met the legal definition of insanity under Section 8.01(a), and the trial court did not err in excluding it on relevance grounds. *See Nejnaoui v. State*, 44 S.W.3d 111, 118 (Tex. App.— Houston [14th Dist.] 2001, pet. ref'd) (trial court did not err in excluding expert's testimony not relevant to any issue before the jury given that expert testified she had no knowledge of the defendant's mental state at the time of the commission of the offense).[2]

## *Conclusion*

In sum, we conclude the trial court did not abuse its discretion in excluding Daigle's proffered expert testimony. First, Daigle was not qualified to testify in this case because his credentials and knowledge did not enable him to give an opinion on whether Holcombe suffered from an alleged mental illness that was connected with the commission of the alleged offenses, and there was a corresponding lack of "fit" between his qualifications and proffered testimony. Second, Daigle's testimony was too general to establish the reliability of his theories and the techniques he used. Third, Daigle's testimony was irrelevant because it would not have been helpful to the jury in deciding the case since he could not give an opinion on whether Holcombe

---

[2] Holcombe argues that the exclusion of testimony from Dr. Schutte and Daigle prevented him from being able to present evidence regarding his sole defensive theory. *See Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014) (federal due process violation occurs only when (1) a state evidentiary rule categorically and arbitrarily prevents the defendant from offering otherwise relevant reliable evidence vital to his defense; or (2) the trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense). Yet, as the trial court noted when it ruled on Daigle's testimony, she was "not suggesting that [Holcombe was] not able to put on [his] defense . . . [b]ut we're talking about, specifically, this piece of evidence, this witness, and whether [Daigle] qualifies to be able to testify[.]" As such, Holcombe was not completely prevented from presenting a defense when the trial court excluded Dr. Schutte's and Daigle's testimonies on those grounds. For this reason, and because there is no state evidentiary rule which categorically or arbitrarily excluded the witnesses' testimonies, the trial court's ruling was not clearly erroneous and no federal due process violation of the right to present a defense occurred. *See id.*

had a severe mental disease or defect within the context of an insanity defense, and he could not give an opinion on whether Holcombe knew his actions during the commission of the offense were wrong.

Again, the trial court is vested with the responsibility of acting as a "gatekeeper" when addressing the qualifications, reliability, and relevance of expert testimony, and its decision to exclude testimony is rarely disturbed by appellate courts absent an abuse of discretion. *Vela*, 209 S.W.3d at 136. Here, we conclude the record shows that the trial court acted within the zone of reasonable disagreement and did not abuse its discretion in excluding Daigle's proffered testimony.

Holcombe's first issue is overruled.

### Dr. Schutte's Testimony

In Issue Two, Holcombe asserts the trial court erred when it excluded Dr. Schutte's proffered expert testimony. A trial court's ruling on the admissibility of scientific expert testimony is reviewed for an abuse of discretion. *Weatherred*, 15 S.W.3d at 542. A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). In determining whether the trial court abused its discretion in making evidentiary decisions, we do not substitute our judgment for that of the trial court because the trial court is in a superior position to evaluate the impact of the evidence. *Id*. at 379. If the record supports the trial court's decision on the admission (or exclusion) of evidence, there is no abuse of discretion and the trial court's decision should be upheld. *Osbourn v. State*, 92 S.W.3d 531, 537-38 (Tex. Crim. App. 2002). To that end, a trial court does not abuse its discretion by excluding expert testimony that would not assist

15

the trier of fact in determining an issue before it.   *See Nejnaoui*, 44 S.W.3d at 117–18.

On voir dire examination outside the presence of the jury, Dr. Schutte testified that he was a licensed psychologist in Texas and New Mexico.   On the issue of what he had done in preparation for his testimony, Dr. Schutte stated that he had reviewed Holcombe's Veteran's Administration (VA) records, police records, the forensic interview with C.R., and a report from another doctor.   He testified that he had evaluated Holcombe once in 2015 and again in 2016.   He testified that he did not review any of Holcombe's medical records from jail or any school records, nor did he speak to Holcombe's family or friends.   When asked what he considered when forming his opinion on Holcombe's sanity, Dr. Schutte responded he had examined Holcombe's history of mental health treatment, considered his two interviews with Holcombe, reviewed a variety of standardized psychological testing, and compared the information he gathered to the insanity legal standard.

Ultimately, Dr. Schutte concluded that Holcombe did not meet the legal definition of insanity because Holcombe had indicated he was acting under the influence of alcohol, natural and synthetic marijuana, and possibly opiate pain medication, which he had voluntarily ingested near the time of the offense.   Dr. Schutte also testified he had diagnosed Holcombe with schizoaffective disorder and post-traumatic stress disorder (PTSD).   Dr. Schutte further clarified, however, that he believed Holcombe did not know what he did was wrong—not because of the presence of these mental diseases—but due to his voluntary intoxication.

Dr. Schutte also testified that it was possible that Holcombe had experienced a dissociative fugue (or dissociative amnesia), which is a disorder in which an individual engages in activities without remembering.   According to Dr. Schutte, the period of lost memory could be for hours,

16

days, or even weeks, and this disorder qualifies as a severe mental disease consistent with requirements of the Texas Penal Code. Dr. Schutte testified that Holcombe had reported there were periods of time in which he had done things and not remembered doing them later. Dr. Schutte also testified that in his 2015 interview with Holcombe, Holcombe told him that he did not recall anything regarding his contact with C.R., which in Dr. Schutte's opinion "could be" consistent with dissociative amnesia. Dr. Schutte also stated there were some dissociative elements in PTSD, and "there [were] elements of disassociation in [Holcombe's] behavior, and potentially in the alleged offense." Nevertheless, Dr. Schutte reiterated his opinion that he believed Holcombe did not know that his conduct was wrong because of his voluntary intoxication, and not because of the possible existence of Holcombe's dissociative fugue.

At the conclusion of the voir dire examination, the State objected to Dr. Schutte's proffered testimony, arguing that it would be irrelevant during the guilt-innocence phase of trial because he was not going to testify that Holcombe did not know that his conduct was wrong, which the State asserted was required to establish an insanity defense under the Texas Penal Code. In particular, the State pointed to the fact that Dr. Schutte opined that Holcombe was unaware his conduct was wrong not based on a severe mental disease or defect, but rather on intoxication, which it argued does not constitute a defense to the commission of a crime. Trial counsel for Holcombe responded that whether Holcombe suffered from a severe mental disease is an issue of fact to be considered by the jury, and there was evidence that Holcombe suffered a dissociative fugue which could establish that Holcombe was temporarily insane at the time of the offenses.

The trial court disagreed with Holcombe's trial counsel, stating that the alleged mental issues do not create a fact issue for the jury to consider, and that Dr. Schutte testified that he

17

attributed Holcombe's wrongful conduct to alcohol consumption, which is not a valid ground for asserting an insanity defense. The trial court then ruled that Dr. Schutte's proffered testimony was not relevant and provided an insufficient basis to submit a jury instruction on insanity.

On appeal, Holcombe argues the trial court abused its discretion in excluding Dr. Schutte's testimony from the guilt-innocence portion of trial on relevance grounds. Although he concedes that voluntary intoxication is not a valid ground for establishing legal insanity, he contends the existence of his alleged mental disease or defect was critical to his defense. Nonetheless, he argues that the trial court erred when it excluded Dr. Schutte's testimony that it was possible that Holcombe suffered from a dissociative fugue because it could establish that Holcombe was temporarily insane, and it was therefore relevant to his insanity defense.

The State counters that because voluntary intoxication is not a valid defense to the commission of a crime, and because Dr. Schutte did not believe a dissociative fugue contributed to Holcombe's alleged insanity, Dr. Schutte could not offer an opinion on whether Holcombe was legally insane at the time of the offense, and his testimony was therefore irrelevant. Stated differently, the State's argument is that Dr. Schutte could not offer an opinion in determining a fact of consequence in the case (i.e., whether Holcombe was legally insane), and his testimony was therefore irrelevant and inadmissible under Rules 401 and 402. It also argues that Dr. Schutte's testimony that it was "possible" that Holcombe suffered a dissociative fugue is too speculative to raise the defensive issue of insanity, relying on *Jeffley v. State*, 938 S.W.2d 514, 515–16 (Tex. App.—Texarkana 1997, no pet.), for that proposition. Likewise, the State contends that a "mere lack of memory does not raise, much less establish, an insanity defense." Finally, the State argues that, assuming the trial court erred by excluding Dr. Schutte's testimony, such exclusion was

harmless because Dr. Schutte's proffered testimony would have had the effect of establishing the opposite of the defensive theory, namely, that Holcombe was *not* legally insane at the time of the offense.

The situation we face is somewhat similar to that presented in *Nejnaoui*, 44 S.W.3d at 117, wherein the defendant challenged the trial court's decision to exclude testimony from defendant's former treating psychiatrist and a collection of excerpts from psychology texts pertaining to the subject of consciousness. Specifically, defendant sought admission of testimony from his psychiatrist explaining the meaning of the words "aware" and "conscious." *Id*. Defendant argued that the psychiatrist's testimony would have assisted the jury in evaluating his proffered defense that he was unaware of the consequences of his actions at the time he committed the charged offense. Defendant contended the testimony and exhibits would assist the jury in determining whether he intentionally or knowingly committed the crime. *Id*.

In *Nejnaoui*, the Houston Court of Appeals upheld the trial court's exclusion of the evidence, reasoning that the psychiatrist's testimony would not be relevant to any issue before the jury because the defendant had not raised insanity as a defense, and by not raising insanity, the defendant had not properly raised a recognized defense. *Id*. at 117–18 (citing *Thomas v. State*, 886 S.W.2d 388, 391 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). *Nejnaoui* concluded that the psychiatrist's testimony that he may have lacked consciousness of his actions "would not be relevant to any issue before the jury because 'we do not recognize any such defense as a legal justification for criminal acts.'" *Id*. at 118 (citing *Thomas*, 886 S.W.2d at 391). The Houston court also based its decision on the fact that the testifying expert had no knowledge of the defendant's mental state during the commission of the offense. *Id*.; *see also Thomas*, 886 S.W.2d

19

at 391 (trial court did not err in excluding expert testimony from a psychiatrist on the issue of intent when defendant did not plead insanity and attempted to raise a "hybrid defense" in which he claimed he was sane but nonetheless lacked intent, and reasoning that since this was not a legal defense, the expert's testimony was not relevant to any issue before the jury).

Likewise, in *Teel*, 2010 WL 4812994, at *2, the Fort Worth Court of Appeals upheld a trial court's decision to exclude expert testimony for its lack of relevance to an insanity defense. In *Teel*, the court based its decision on the fact that the proffered expert had no opinion on whether the defendant was insane at the time of the offense. *Id*.

One immediately apparent distinction between *Nejnaoui* and *Thomas*, as compared to this case, is that Holcombe *did* raise insanity as a defense and attempted to rely entirely upon it as a defensive theory. Likewise, the issue in *Nejnaoui* and *Thomas* was not whether an expert's testimony was relevant to the defendant's insanity defense (as is the case here), but whether it was relevant to determining the culpable mental state element of the charged offenses. Another apparent difference is that, unlike the psychiatrists in *Nejnaoui* and *Teel*, Dr. Schutte did testify that he believed Holcombe was insane at the time he committed the offenses due to voluntary intoxication, and therefore, he had an opinion on Holcombe's mental state during the relevant time period.

Yet, one key similarity present in all these cases is that none of the testifying experts could offer testimony relevant to the central issue before the jury, namely, whether the defendant was *legally* insane at the time of the commission of the offense. In *Nejnaoui* and *Thomas*, the Houston courts reasoned that insanity was not an issue before the jury because neither defendant had properly raised the issue in those cases. In *Teel*, the Fort Worth court based its decision on the

20

fact that the expert would have testified about the defendant's past mental illness as it existed before the offense, but the expert reportedly did not have an opinion on whether the defendant was legally insane at the time of the charged offense. Here, Dr. Schutte similarly testified that Holcombe was not legally insane due to his voluntarily intoxication. In sum, none of these experts were able to testify regarding the mental state of each defendant during the commission of the offenses, such that their testimony related to the relevant issue before the jury: whether the defendant was legally insane at the time of the offense.

With *Nejnaoui*, *Thomas,* and *Teel* in mind, we conclude that the trial court did not abuse its discretion in excluding Dr. Schutte's testimony after finding it was irrelevant to the issue of insanity. *See Nejnaoui*, 44 S.W.3d at 117–18 (a trial court does not abuse its discretion in excluding expert testimony that will not assist the trier of fact in determining a fact of consequence); *see also Thomas*, 886 S.W.2d at 391; *accord Teel*, 2010 WL 4812994, at *2. The facts of consequence here included (1) whether Holcombe, by reason of severe mental illness or defect, (2) knew what he was doing was wrong at the time he committed the charged offenses. In his testimony, Dr. Schutte reported he had diagnosed Holcombe with PTSD and schizoaffective disorder. Moreover, he testified to the existence of a possible dissociative fugue, which may have been relevant to the severe mental disease or defect element of his insanity defense. Nevertheless, Dr. Schutte himself attributed Holcombe's alleged insanity at the time of the offense to Holcombe's voluntary intoxication on alcohol, marijuana, and possibly opiate medication, and not because of a serious mental disease or defect such as dissociative fugue, PTSD, or schizoaffective disorder.

Because voluntary intoxication is not recognized as a valid defense to the commission of

21

an offense, Dr. Schutte could not offer a relevant opinion on whether Holcombe knew what he was doing was wrong at the time of the commission of the offense. While Dr. Schutte's testimony that he had diagnosed Holcombe with PTSD and schizoaffective disorder may have been relevant to the severe mental disease or defect element of his insanity defense, this diagnosis would not have been relevant to establishing whether Holcombe knew what he was doing was wrong at the time of his commission of the offense. As such, the trial court did not abuse its discretion by determining that Dr. Schutte's testimony would have been irrelevant and inadmissible under Rules 401 and 402. *See Teel*, 2010 WL 4812994, at \*2.

We further conclude that the trial court did not abuse its discretion in excluding Dr. Schutte's testimony regarding Holcombe's possible dissociative fugue (and that he could not remember committing the offenses) because Dr. Schutte admitted that it did not contribute to his opinion regarding whether Holcombe knew what he was doing was wrong at the time of the commission of the offense. For the same reasons as Holcombe's voluntary intoxication, Dr. Schutte's proffered testimony on Holcombe's possible dissociative fugue was not relevant to the issue before the jury. Further, a lack of memory alone is insufficient to raise an insanity defense, and the trial court could have reasonably concluded that Dr. Schutte's testimony was too speculative to be of assistance to the jury. *See Cato v. State*, 534 S.W.2d 135, 136–38 (Tex. Crim. App. 1976) (lack of memory is insufficient evidence to require the submission of a jury instruction on insanity defense); *Jeffley*, 938 S.W.2d at 516 (expert testimony of a hypothetical possibility that defendant suffered from a lack of memory is insufficient to require submission of a jury instruction on insanity); *Nutter v. State*, 93 S.W.3d 130, 131–32 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that the existence of a mental disease, alone, does not establish legal insanity;

22

instead, the defendant must establish that he was mentally ill at the time of the offense to the point that he did not know his conduct was wrong).

As a gatekeeper, the trial court is vested with the often-difficult duty of determining the admissibility of evidence, and to exclude evidence that is irrelevant or is likely to confuse the jury or make its decision-making unnecessarily difficult. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Since we cannot substitute our judgment for that of the trial court in determining whether it abused its discretion in making evidentiary decisions, we conclude that the trial court did not err in excluding Dr. Schutte's testimony. As proffered, Dr. Schutte's testimony was not relevant to Holcombe's insanity defense and did not sufficiently raise a factual issue to justify a jury instruction. Proffered testimony about Holcombe's voluntary intoxication, dissociative fugue, and lack of memory, standing alone, did not help to establish a fact of consequence in the case: whether Holcombe, at the time of the commission of the offense, knew what he was doing was wrong. Therefore, we hold the trial court did not abuse its discretion in excluding Dr. Schutte's testimony based on lack of relevance.

Holcombe's second issue is overruled.

## CONCLUSION

Having overruled Holcombe's two issues, we affirm the trial court's judgment.

GINA M. PALAFOX, Justice

December 19, 2018

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

(Do Not Publish)

23